**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TUNDE FEMI KOREDE,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:26-1404** |
| **v.** | : | **(JUDGE MANNION)** |
| **ANGELA HOOVER, Warden, Clinton County Correctional Facility, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Currently before the Court are *pro se* Plaintiff Tunde Femi Korede ("Korede")'s complaint and motion for a temporary restraining order ("TRO Motion"). For the reasons stated below, the Court will dismiss the complaint without prejudice to Korede filing an amended complaint and dismiss the TRO motion as moot.

## I. BACKGROUND

Korede commenced this action by filing his complaint and TRO motion, both of which the Clerk of Court docketed on May 21, 2026. (Docs. 1, 3.) He also remitted the filing fee. *See* (Docket Notation Accompanying Doc. 1).

In his complaint, Korede names as Defendants (1) Angela Hoover ("Hoover"), the Warden of the Clinton County Correctional Facility ("CCCF"); (2) CCCF's Medical Director ("Director"); and (3) John/Jane Doe CCCF

medical personnel ("Does"). *See* (Doc. 1 at 1, 3).[1] Korede's allegations relate to events that have occurred during his unidentified period of confinement at the CCCF. *See* (*id.* at 3–5).

Korede alleges that he has "a documented history of severe cardiac disease, including chronic systolic and diastolic heart failure and dilated cardiomyopathy." (*Id.* at 3.) His "[m]edical records reflect significantly reduced cardiac function, including an ejection fraction of approximately 25% and reports as low as 11%, indicating severe impairment." (*Id.* at 4.)[2] In addition, "[c]ardiology evaluations have identified [him] as a high-risk patient with potential for life-threatening arrhythmias and sudden cardiac arrest." (*Id.*); *see also* (*id.* at 2 (alleging that his medical conditions "place [him] at a high risk of sudden cardiac arrest and death")).

---

[1] Korede has not complied with Federal Rule of Civil Procedure 10 insofar as he does not list the Does as Defendants in the caption of his complaint. *See* (*id.* at 1); Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties."); *see also Luo v. Wang*, 71 F.4th 1289, 1296 (10th Cir. 2023) ("Federal Rule of Civil Procedure 10(a) requires the names of all parties to appear in the caption of a complaint, and the title of all other pleadings must name the first party on each side."). Instead, he names them as Defendants in only the body of his complaint. *See* (Doc. 1 at 3).

[2] Korede attaches to his complaint (1) a progress note dated February 14, 2024, from Dr. Alanna Morris of the Emory Advanced Heart Failure Clinic, *see* (Doc. 1-3 at 2–3), and (2) a report from a November 29, 2007 CT scan of Korede's abdomen and pelvis. *See* (*id.* at 6–9).

Defendants "have been made aware" of Korede's medical condition "through medical records, complaints, and repeated requests for care." (*Id.*) Korede also "submitted multiple sick call requests and grievances regarding his condition." (*Id.* at 2.)[3] As such, "his medical needs have been known or readily available to those responsible for his custody and care." (*Id.* at 5.)

Despite Defendants' knowledge of Korede's medical condition, they have failed to "take reasonable steps to address the known risk." (*Id.* at 4.) Instead, his treatment has consisted of "medication management and minimal follow-up, without meaningful specialist intervention." (*Id.*) He has also "not received necessary advanced cardiac intervention, including but not limited to implantable cardiac devices such as a pacemaker or defibrillator." (*Id.*) Due to Defendants' alleged failures, Korede "experiences ongoing symptoms including shortness of breath at rest, dizziness, fatigue, and episodes of near collapse." (*Id.*)

Korede also alleges that he has experienced "continuous and coordinated" detention "between local and federal authorities, including [the CCCF] and U.S. Immigration and Customs Enforcement [("ICE")]." (*Id.* at 4–5.) He asserts that "Defendants cannot avoid constitutional responsibility by

---

[3] Korede avers that "in the alternative, the grievance process was unavailable or ineffective." (*Id.*).

characterizing [his] custody as fragmented or shifting between agencies" because he "has remained under government control." (*Id.* at 5.) However, Korede asserts that he has experienced a "failure to ensure continuity of care across [his] custodial settings," which "has resulted in gaps in treatment and a lack of appropriate specialist intervention" and has "further exacerbat[ed his] condition" (*Id.*) He also "remains in custody under conditions [placing] him at ongoing and increasing risk of serious harm or death." (*Id.*)

Based on these allegations, Korede raises the following claims under 42 U.S.C. §1983 against Defendants: (1) deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment to the United States Constitution; (2) violations of his substantive due process rights under the Fourteenth Amendment relating to his conditions of confinement and lack of continuity of medical care; (3) failure to provide continuity of care; and (4) liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) due to an unconstitutional policy, practice, or custom. *See* (*id.* at 6–8). He asserts that he "faces an immediate and substantial risk of . . . [s]udden cardiac arrest[, p]ermanent injury[, or d]eath," and "[e]ach day without proper treatment increases the likelihood of catastrophic harm." (*Id.* at 8.) For relief, he seeks compensatory damages and injunctive relief in the nature of an order

directing that he receives "immediate and adequate cardiac evaluation and treatment" and a "transfer to a medical facility capable of providing necessary care." (*Id.* at 9.) Alternatively, he seeks his release from confinement "if constitutionally adequate medical care cannot be provided." (*Id.*)

## II. LEGAL STANDARDS

### A. Initial Screening Under 28 U.S.C. §1915A

The Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If such a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. *See id.* §1915A(b)(1).

In reviewing legal claims under Sections 1915A(b), the Court applies the standard governing motions to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to Section 1915A, "a court employs the motion to dismiss standard set forth under [Rule] 12(b)(6)"); *see also Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (unpublished) ("[O]ur review of a §1915A(b)(1) dismissal for failure to state a claim is guided by the same de novo standard used to evaluate motions to dismiss under [Rule] 12(b)(6)." (citations omitted)). Thus, to avoid

dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the Court will not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2)(B). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of *pro se* litigation, the Court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we

have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 106). Moreover, when construing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). However, *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

### B. Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights"; rather, it is "merely a means through which to vindicate violations of federal law committed by state

actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002) and *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. Screening of Korede's Complaint

#### 1. Deliberate-Indifference-to-Serious-Medical-Needs Claim

##### a. Korede's Incarceration Status During the Events Alleged in His Complaint

Before addressing whether Korede alleges a plausible deliberate-indifference-to-serious-medical-needs claim against Defendants, the Court must determine his incarceration status during his confinement at the CCCF, because it affects whether the Eighth Amendment, which applies to individuals already convicted and sentenced, or the Fourteenth Amendment, which applies to pretrial detainees, applies to this claim. Korede does not explicitly allege whether he is confined at the CCCF as a convicted and sentenced prisoner or as a pretrial detainee when the events at issue in his

complaint allegedly occurred. *See Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ("*Hubbard I*") (explaining that the Eighth Amendment applies to individuals who have been convicted and sentenced); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("As a pretrial detainee, Thomas is not subject to the Eighth Amendment's protections; rather, the Fourteenth Amendment's Due Process Clause governs." (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 579 (3d Cir. 2004))); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (explaining that the Eighth Amendment "has no application" until the government obtains a "formal adjudication of guilt," and that pretrial detainees' rights "are at least as great as the Eighth Amendment protections available to ... convicted prisoner[s]"). Nevertheless, it appears from an allegation in the complaint, a notation on the docket, and the public records that Korede is confined in the CCCF as an immigration detainee.

As stated above, Korede alleges that his "detention has been continuous and coordinated between local and federal authorities, including [the CCCF] and [ICE]." (Doc. 1 at 4–5.) The docket also shows that Korede has an Alien Registration Number ("A#") (029-626-658). As for the available public records, ICE's Online Detainee Locator System (https://locator.ice.gov/odls/#/search) shows that the individual with that A#,

whose name is noted as "Tunde Femi Oyedele," is in ICE custody at the CCCF.

The public records also show that on April 10, 2024, Korede was sentenced to twenty-seven months of federal confinement, to be followed by three years of supervised release, after pleading guilty to conspiracy to commit fraud (18 U.S.C. §1341) in the United States District Court for the Northern District of Ohio. *See United States v. Korede*, No. 23-cr-116-2 (N.D. Ohio), ECF No. 36.[4] According to the Federal Bureau of Prisons ("BOP")'s Inmate Locator (https://www.bop.gov/inmateloc/), Korede is no longer in BOP custody as of April 10, 2026, and it does not appear from the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch) that Korede has any pending criminal charges in the Pennsylvania state courts.

Overall, based on the information available at this stage, the Court will consider Korede as an immigration detainee during the events described in

[4] The docket in Korede's federal criminal case indicates that almost a year after his sentencing, he filed a motion to vacate, set aside, or correct a sentence under 28 U.S.C. §2255, which the Northern District of Ohio dismissed on June 17, 2025. *See id.*, ECF Nos. 43, 45, 46. Then, on December 1, 2025, Korede filed a motion for a reduction in sentence under 18 U.S.C. §3582(c)(1)(A), which the Northern District of Ohio dismissed as moot on April 15, 2026, due to Korede's release from federal incarceration on April 10, 2026. *See id.*, ECF Nos. 47, 57, and Unnumbered Dkt. Entry After ECF No. 57.

his complaint. So considered, the Fourteenth Amendment's Due Process Clause applies to his deliberate-indifference-to-serious-medical-needs claim. *See Jabbi v. City of Clinton Cnty.*, No. 21-cv-1818, 2022 WL 509110, at *2 n.18 (M.D. Pa. Feb. 18, 2022) ("Because Jabbi was an immigration detainee in federal custody being housed in a state facility (rather than a convicted prisoner), his claims implicate the Due Process Clause of the Fifth and Fourteenth Amendments, not the Eighth Amendment." (citing *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020), *E.D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019), and *Hubbard I*, 399 F.3d at 166–67 (3d Cir. 2005))); *see also E.D.*, 928 F.3d at 306–07 ("This Circuit has longed viewed the legal rights of an immigration detainee to be analogous to those of a pretrial detainee.").

**b. Plausibility of Korede's Claim**

Because "the Fourteenth Amendment affords pretrial detainees protections "at least as great as the Eighth Amendment protections available to a convicted prisoner," courts apply the same standard "pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment[] when evaluating whether a claim for inadequate medical care by a [pretrial] detainee is sufficient under the Fourteenth Amendment." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere*,

463 U.S. at 244 and citing *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987)). To state a constitutional claim based on the failure to provide medical treatment, a prisoner-plaintiff must allege facts indicating that prison officials were deliberately indifferent to the prisoner's serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Thus, the relevant inquiry is whether a defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

As for the objective component, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Lanzaro*, 834 F.2d at 347 (internal quotation marks omitted). A serious medical need also exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Regarding the subjective component, a prisoner-plaintiff must show that the prison official "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 841. A prison official is not deliberately indifferent "unless the official knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. An incarcerated plaintiff properly alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (explaining that a prisoner-plaintiff can show deliberate indifference where prison official "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed" (internal citations and quotation marks omitted)). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

The deliberate indifference standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," and courts must accordingly "'disavow any attempt to second-guess the propriety or adequacy of their particular course

of treatment' so long as it 'remains a question of sound professional judgment.'" *Pearson*, 850 F.3d at 538 (quoting *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). A claim that "a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* (quoting *Estelle*, 429 U.S. at 106). Thus, claims that a physician has "inadequately diagnosed and treated" a plaintiff's medical condition does not amount to a violation of the Eighth Amendment if the physician was exercising their professional judgment in their diagnosis and treatment. *Id.*

Here, Korede sufficiently pleads that he has a serious medical need based on his heart condition. However, he has not plausibly pleaded that any Defendant was deliberately indifferent to his serious medical needs. In the first instance, although Korede alleges that he "has not received necessary advanced cardiac intervention, including but not limited to implantable cardiac devices such as a pacemaker or defibrillator," he does not allege that any medical professional ever determined that these forms of cardiac intervention were ***recommended*** or ***needed***. *See* (Doc. 1 at 3–5). Additionally, his medical records attached to his complaint, one from more than two years ago, *see* (Doc. 1-3 at 2–3), and the other from almost twenty years ago, *see* (*id.* at 6–9), support his assertion that he has a serious

medical condition but do not provide any information as to the type of medical treatment Korede should be receiving in May 2026. Therefore, Korede has not plausibly alleged that any Defendant prevented him from receiving needed or recommended medical treatment.

Korede also fails to allege that any Defendant has delayed necessary medical treatment for a non-medical reason, or that any Defendant knew about his need for medical treatment but intentionally refused to provide it. Although Korede alleges that Defendants knew about his "condition," *see* (Doc. 1 at 4), he does not allege that they knew about his need for medical treatment and intentionally refused to provide it.

As to Korede's claim against Hoover, she is a non-medical prison official, *see Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005) (unpublished) (explaining that wardens/superintendents of correctional facilities are "undisputably administrators, [and] not doctors"), and Korede alleges that he received some medical treatment. *See* (Doc. 1 at 4). "As a general rule, non-medical prison officials are not deliberately indifferent . . . simply because they failed to respond directly to medical complaints of a prisoner who was already being treated by the prison doctor or because they deferred to the judgment of the medical staff treating the inmate." *Durmer v. O'Carroll*, 991 F.2d 64, 66 (3d Cir. 1993). Therefore, to state a plausible

deliberate-indifference claim against Hoover, Korede must allege facts plausibly showing that she possessed actual knowledge or a reason to believe that "prison doctors or their assistants [were] mistreating (or not treating)" him. *See Spruill*, 372 F.3d at 236. Korede fails to include any allegations that Hoover had reason to believe that his medical providers were mistreating or failing to treat him.

Overall, the gist of Korede's factual allegations is that he merely disagrees with his medical treatment at the CCCF. Korede acknowledges that he has received treatment for his medical condition through "medication management and minimal follow-up." (*Id.*) However, he believes that he requires "meaningful specialist intervention." (*Id.*) He also believes that he requires "advanced cardiac intervention, including but not limited to implantable cardiac devices such as a pacemaker or defibrillator." (*Id.*) These types of allegations constitute a "mere disagreement as to the proper medical treatment," *see Spruill*, 372 F.3d at 235, and are insufficient to state a plausible Section 1983 claim for deliberate indifference to his serious medical needs. *See Robinson v. Sec'y Pa. Dep't of Corr.*, 663 F. App'x 96, 98 (3d Cir. 2016) (unpublished) (affirming district court's dismissal of prisoner-plaintiff's deliberate-indifference-to-serious-medical-needs claim based on defendant-doctor's denial of plaintiff's "requests for an MRI or CT

scan as well as his demands to see a specialist" because they constituted a "mere disagreement as to the proper medical treatment" (quoting *Spruill*, 372 F.3d at 235)); *Severino-Mota v. Lidwell*, No. 22-cv-2030, 2024 WL 69154, at *4 (M.D. Pa. Jan. 5, 2024) ("Plaintiff's belief that he should have received different treatment and should have been transported to an outside specialist constitutes a 'mere disagreement as to the proper medical treatment,' and is not an actionable Eighth Amendment claim." (quoting *Lanzaro*, 834 F.2d at 346)); *Anderson v. Price*, No. 20-cv-356, 2022 WL 4357481, at *5 (M.D. Pa. Sept. 20, 2022) ("Plaintiff's belief that he needed to see a specialist and Defendant Price recommended Plaintiff speak to the medical director concerning his request to see a specialist, who determined that there was no need to involve a specialist, such allegations, at best, demonstrate Plaintiff's disagreement with the type of treatment rendered."), *aff'd*, No. 22-3058, 2023 WL 5814664 (3d Cir. Sept. 8, 2023); *Buttolph v. Prime Care Med. Inc.*, No. 16-cv-325, 2020 WL 1285324, at *7 (M.D. Pa. Mar. 18, 2020) (concluding that prisoner-plaintiff's "main argument, that he should have been referred to a specialist or scheduled for surgery sooner, constitutes a 'mere disagreement as to the proper medical treatment'" (quoting *Lanzaro*, 834 F.2d at 346)). Accordingly, Korede fails to allege a plausible deliberate-indifference-to-serious-medical-needs claim in his complaint.

### 2. Korede's Request for Release from Confinement

Among Korede's requests for relief is a request that he be released from confinement if he cannot receive "constitutionally adequate medical care." (Doc. 1 at 9.) This request for relief is not cognizable in a civil rights action and must instead be pursued through a petition for a writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Hope*, 972 F.3d at 323 ("Where a petitioner seeks release from detention, habeas (not a §1983 action seeking release) is proper.").

### 3. Korede's Substantive-Due-Process Claim Based on the Conditions of His Confinement

Korede raises a standalone substantive-due-process claim based on alleged "[p]unitive [c]onditions of [c]onfinement." (Doc. 1 at 6.) He asserts that he is confined "under conditions that expose him to a substantial risk of death without adequate medical care." (*Id.* at 7.) As explained below, Korede has not pleaded a plausible conditions-of-confinement claim in his complaint.

Similar to Korede's deliberate-indifference-to-serious-medical-needs claim, the Due Process Clause of the Fourteenth Amendment governs

claims brought by pretrial detainees challenging their conditions of confinement. *See Hubbard I*, 399 F.3d at 166. To establish a constitutional violation under the Fourteenth Amendment, a pretrial detainee plaintiff would have to plausibly allege that the challenged conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."); *see also Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) ("Given pretrial detainees' federally protected liberty interests . . . under the Due Process Clause . . . a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." (citation and internal quotation marks omitted)), *abrogated on other grounds by Bistrian*, 912 F.3d 79, 96 (3d Cir. 2018). When analyzing whether a condition of confinement amounts to punishment, the inquiry generally turns on whether the challenged conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See Bell*, 441 U.S. at 538–39 ("A court must decide whether the [particular restriction or condition accompanying pretrial detention] is imposed for the purpose of punishment or whether it is but an incident of

some other legitimate governmental purpose."); *Hope*, 972 F.3d at 326 (explaining that, when evaluating claims of punitive conditions of confinement, "[t]he touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) ("*Hubbard II*"))); *Hubbard I*, 399 F.3d at 158 (discussing analysis of whether condition of confinement constitutes punishment for Fourteenth Amendment purposes). In addition, the Court should consider the totality of the circumstances in assessing whether a prisoner's conditions of confinement violate the Fourteenth Amendment. *See Hubbard II*, 538 F.3d at 236, 238 (examining totality of circumstances to determine whether conditions of confinement constitute Fourteenth Amendment violation); *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996) (explaining that "to determine whether conditions of confinement violate the Eighth Amendment, it is necessary to examine the totality of the conditions at the institution"); *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 1000–01 (3d Cir. 1983) (discussing that "the overall length of confinement is only one factor among several that must be considered by a district court in evaluating the totality of circumstances relevant to any alleged constitutional deficiency in shelter").

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotation marks and alterations omitted). In general, when alleging a sufficiently culpable state of mind, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991); *see also Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference."); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (unpublished) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners, and pretrial detainees[.]" (internal citations omitted)). Furthermore,

> [i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence

> in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

*Bell*, 441 U.S. at 541 n.23 (quoting *Pell v. Procunier*, 417 U.S. 817, 827 (1974)).

Here, presuming that Korede can prosecute a conditions-of-confinement claim that is essentially duplicative of his deliberate-indifference-to-serious-medical-needs claim, he fails to state a plausible conditions-of-confinement claim because, as explained above, he does not allege sufficient facts showing that Defendants were deliberately indifferent, *i.e.*, that they consciously disregarded a serious risk to his health or safety. Although Korede alleges that he has a serious heart condition of which Defendants were aware, his allegations constitute mere disagreements with his medical treatment. Moreover, Korede's acknowledgement that he has received medical treatment necessarily shows that Defendants did not consciously disregard a risk to his health. Accordingly, Korede fails to allege a plausible conditions-of-confinement claim in his complaint.

**4. Korede's Failure to Provide Continuity of Care Claim**

Korede asserts a Section 1983 claim based on Defendants' alleged failure to "ensure continuity of care, including necessary specialist evaluation and intervention." (Doc. 1 at 7.) The Court is unaware of any such standalone

cause of action and construes this claim as a separate claim for deliberate indifference to his serious medical needs. So construed, Korede fails to plead a plausible claim for relief.

It is also entirely unclear from Korede's complaint how Defendants have allegedly failed to ensure his continuity of care since he arrived at CCCF. Other than his attached medical records from February 2024 and November 2007, Korede does not allege any facts to the medical care he was receiving prior to his arrival at CCCF, which appears to have occurred less than two months ago. Moreover, to the extent that he is seeking an appointment with a specialist or the insertion of a pacemaker, Korede does not allege that his medical provider prior to his confinement at CCCF scheduled an appointment with a specialist or determined he needed a pacemaker. In other words, Korede fails to allege any facts showing how Defendants did not ensure his continuity of care following his incarceration at CCCF. Accordingly, the Court will dismiss this claim for failure to state a claim upon which relief can be granted.

### 5. Korede's *Monell* Claim

Korede alleges that "Defendants' actions were taken pursuant to policies, practices, or customs that resulted in inadequate medical care." (Doc. 1 at 8.) He asserts that they failed to implement (1) "any system to

ensure timely specialist referral for detainees with serious cardiac conditions" or (2) "adequate systems to identify and treat detainees with serious medical conditions." (*Id.*) He further asserts that Defendants' failure directly caused the violation of his constitutional rights. *See* (*id.*).

The Court will dismiss Korede's *Monell* claim because such a claim lies only against a municipality, and he does not name a municipality as a defendant in his complaint. *See Monell*, 436 U.S. at 695 (explaining that the Court was addressing "the §1983 cause of action against a ***local government***" (emphasis added)); *Soberanis v. Spellman*, No. 25-cv-676, 2026 WL 1209140, at *10 (N.D.N.Y. May 4, 2026) ("Under *Monell*, the proper defendant is the municipality itself . . . ."), *report and recommendation adopted*, 2026 WL 1494441 (N.D.N.Y. May 28, 2026). Additionally, even if Korede named a municipality as a Defendant in his complaint, the Court has already explained that he fails to allege a plausible constitutional violation in his complaint. Accordingly, the Court will dismiss Korede's *Monell* claim for failure to state a claim upon which relief can be granted.

**B. Leave to Amend**

Because the Court has determined that Korede's complaint is subject to dismissal for failure to state a claim under Section 1915A(b)(1), the Court must decide whether to give him leave to file an amended complaint.

Although district courts should generally give leave to amend, they may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

Here, the Court will grant Korede leave to file an amended complaint as to his claim that Defendants were deliberately indifferent to his serious medical needs. As for his conditions-of-confinement and failure-to-ensure-continuity-of-care claims, those claims are either duplicative of or properly characterized as deliberate-indifference-to-serious-medical-needs claims. If, however, Korede desires to assert unconstitutional conditions of

confinement that are not duplicative of his deliberate-indifference-to-serious-medical-needs claim, he may do so in an amended complaint. Similarly, if Korede desires to pursue a deliberate-indifference-to-serious-medical-needs claim based on an alleged lack of continuity of care following his arrival at the CCCF, he should not do so as a standalone cause of action and include any relevant factual allegations as part of his deliberate-indifference claim. As for his *Monell* claim, he may not replead this cause of action if the named Defendants remain the same because there is no municipality named as a Defendant. Thus, if Korede desires to pursue a *Monell* claim, he must name a municipal defendant.[5] Finally, Korede may not seek his release from incarceration as a request for relief in an amended complaint.

**C. Korede's TRO Motion**

Korede moves for a temporary restraining order requiring Defendants to, *inter alia*, "provide immediate cardiac evaluation by a qualified specialist" and transfer him to "an appropriate medical facility if necessary." (Doc. 3 at 6). Because the Court will dismiss Korede's complaint, the Court will deny his TRO Motion as moot. *See, e.g.*, *Draves v. City of N.Y.*, No. 25-cv-3305,

[5] The Court expresses no opinion on the viability of such a cause of action should Korede include it in an amended complaint.

2026 WL 1256983, at *8 (E.D.N.Y. May 7, 2026) ("Because the complaint is dismissed, Draves's motion for a preliminary injunction is denied as moot.").

## IV. CONCLUSION

For the reasons stated above, the Court will dismiss Korede's complaint, grant him leave to file an amended complaint, and deny as moot his TRO Motion. An appropriate Order follows.[6]

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/20/26
26-1404-01

[6] The Order will provide additional information to Korede about the filing of an amended complaint.